UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| NICHOLAS CAMERON MORTON, | Case No. 3:22-cv-00186-MMD-CLB |
|---|---|
| Plaintiff, | SCREENING ORDER |
| v. | |
| R. PERRI, *et al.*, | |
| Defendants. | |

**I.   SUMMARY**

Plaintiff Nicholas Cameron Morton, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil-rights complaint pursuant to 42 U.S.C. § 1983 and filed an application to proceed *in forma pauperis* ("IFP Application"). (ECF Nos. 1-1, 1.) Morton's IFP Application was deficient, so the Court denied it without prejudice to Morton's ability to file a second application by July 2, 2022. (ECF No. 3.) Morton timely filed a second IFP Application. (ECF No. 4.)[1] The matter of the filing fee will be temporarily deferred. The Court now screens Morton's civil-rights complaint under 28 U.S.C. § 1915A.

**II.   SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is

---

[1]The Court notes that Morton might not be eligible for IFP status. According to his application, Morton can pay the $402 filing fee in full. (ECF No. 4 at 4.) If Morton's financial situation has changed, he must file an updated IFP Application demonstrating his inability to pay the full $402 filing fee up front.

immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must

provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

### III. SCREENING OF COMPLAINT

In his Complaint, Morton sues four Defendants and one Doe Defendant for events that allegedly took place while he was incarcerated at Northern Nevada Correction Center ("NNCC"). (ECF No. 1-1 at 1-3.) Morton sues R. Perri, C. Daniels, Perrie, and W. Gittere. (*Id.* at 2.) He brings three claims and seeks monetary relief. (*Id.* at 3-6.) Morton alleges the following.

Beginning in December 2021, Defendants did not correctly quarantine prisoners who were infected with COVID-19 and placed infected prisoners in Morton's housing unit. (*Id.* at 2.) Defendants provided the prisoners with cloth masks. (*Id.* at 2-4.) Defendants did not allow the prison's windows to be opened. (*Id.*) Defendants did not test prisoners

for COVID-19 every week. (*Id.* at 2.) Defendants allowed prisoners' food to be served in open trays instead of closed Styrofoam containers. (*Id.* at 4.) When Morton complained about being housed with COVID-19-positive prisoners, nurses and guards told him that the warden and director wanted everyone to get herd immunity. (*Id.* at 5.) Morton caught COVID-19 and it damaged his sense of smell and breathing. (*Id.* at 2, 5.)

Based on these allegations, Morton contends that Defendants were deliberately indifferent to his serious medical needs and exposed him to unsafe prison conditions. (*Id.* at 3-5.) The Court liberally construes the Complaint as bringing claims based on those two theories of liability. The Court will address each theory in turn.

### A. Eighth Amendment Deliberate Medical Indifference

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quotation omitted). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082-83 (9th Cir. 2014).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id*. "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id*.

(quotations omitted). When the allegations show merely a difference of opinion between prisoner and his doctors, the prisoner must show that the doctors chose a course of treatment that "was medically unacceptable under the circumstances" and did so "in conscious disregard of an excessive risk to [the prisoner's] health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996), *overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 176, 1082-83 (9th Cir. 2014).

Based on the allegations, Morton caught COVID-19 while incarcerated at NNCC and it damaged his sense of smell and ability to breathe. These allegations are not enough to state a colorable claim that Morton had a serious medical need, let alone that any Defendant knew about that need and purposely acted against or failed to respond to it. But it is not yet clear that Morton cannot allege any set of facts upon which relief could be granted. So the claim for Eighth Amendment deliberate medical indifference is dismissed without prejudice and with leave to amend.

### B.  Eighth Amendment Unsafe Prison Conditions

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer*, 511 U.S. at 832. The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *See Farmer*, 511 U.S. at 832.

To challenge conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective prong requires a "showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id.*; *see Williams v. Wood*, 223 F. App'x 670, 671 (9th Cir. 2007) (holding that an inmate's "speculative and generalized fears of harm at the hands of other prisoners do not rise to a sufficiently substantial risk of serious harm to his future health").

With respect to the subjective prong of the Eighth Amendment analysis, a prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate . . . safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id*. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *See id.* at 843.

Additionally, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844; *see also Hallinan v. Scarantino*, 466 F. Supp. 3d 587, 606 (E.D.N.C. 2020) (finding that the "fact that respondents' response may prove inadequate to prevent the spread of COVID-19 does not establish they were deliberately indifferent").

Morton broadly alleges that each Defendant had a duty to protect him from COVID-19 but failed to do so. But he pleads no facts to support this conclusion. For example, Morton concludes without facts that Perri knowingly allowed infected inmates to be housed with uninfected inmates. He similarly concludes that Gittere had the ability to order "correct" quarantine procedures but did not do so. Although Morton pleads some facts about the conditions of his confinement, they are not enough to show that any Defendant failed to reasonably respond to the risk that COVID-19 posed for Morton. For example, Morton alleges that his housing unit had infected and non-infected prisoners, but he does not describe his housing unit or cell. Morton complains that prisoners were not tested weekly for COVID-19, but does not allege facts to show how often prisoners were tested or the reasons why they were tested.

The Court finds that the allegations are not enough to adequately describe the conditions of confinement that Morton was exposed to or state a colorable claim that any Defendant was deliberately indifferent to the risk they posed. But it does not yet appear that Morton cannot state any set of facts upon which relief could be granted. So the claim for Eighth Amendment unsafe prison conditions is dismissed without prejudice and with leave to amend.

### IV.     LEAVE TO AMEND

To be clear, the Court does not grant Morton leave to amend in any way that he sees fit. Morton has leave to amend by alleging additional true facts to show that any Defendant personally participated in the alleged constitutional violations and to cure the deficiencies of the Complaint identified herein. Morton also has leave to amend by adding parties and substituting the true name of any Doe Defendant. Morton is cautioned that the use of Doe Defendants is not favored in the Ninth Circuit, so he should attempt to determine an alleged bad actor's identity to properly name him or her as a defendant in this action. The Court does not give Morton leave to assert new claims.

If Morton chooses to file an amended complaint, he is advised that an amended complaint replaces the original complaint, so the amended complaint must be a complete pleading. This means that the amended complaint must contain all facts and claims and identify all Defendants that Morton intends to sue. He must file the amended complaint on this Court's approved prisoner-civil-rights form, and it must be entitled "First Amended Complaint." Morton must follow the instructions on the form. He need not and should not allege very many facts in the "nature of the case" section of the form. Rather, in each count, he should allege facts sufficient to show what each Defendant did to violate his civil rights. He must file the amended complaint within *30 days* from the date of this order.

### V.      CONCLUSION

It is therefore ordered that a decision on the second application to proceed *in forma pauperis* (ECF No. 4) is deferred.

It is further ordered that the claim for Eighth Amendment deliberate medical indifference is dismissed without prejudice and with leave to amend.

It is further ordered that the claim for Eighth Amendment unsafe prison conditions is dismissed without prejudice and with leave to amend.

It is further ordered that Defendants R. Perri, C. Daniels, Perrie, and W. Gittere are dismissed from the Complaint without prejudice.

It is further ordered that Morton has *30 days* from the date of this order to file an amended complaint curing the deficiencies of his Complaint as stated in this order. Morton must file the amended complaint on this Court's approved prisoner civil-rights form, and he must write the words "First Amended" above "Civil Rights Complaint by an Inmate" in the caption.

It is further ordered that if Morton does not file an amended complaint within *30 days*, this action will be subject to dismissal without prejudice due to failure to state a claim and failure to follow a court order.

The Clerk of Court is directed to file the Complaint (ECF No. 1-1) and send Morton a courtesy copy of the Complaint and the approved form for filing a § 1983 complaint and instructions for the same.

DATED THIS 31st Day of May 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE