UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| NICK MORTON,<br><br>                Plaintiff,<br>    v.<br>R. PERRI, *et al*.,<br><br>                Defendants. | Case No. 3:22-cv-00186-MMD-CLB<br><br>SCREENING ORDER |

**I.     SUMMARY**

This action began with a civil-rights complaint filed under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* ("IFP Application") by *pro se* state prisoner Nick Morton. (ECF Nos. 1, 1-1.) The Court denied Morton's IFP Application because it was deficient, and he timely filed a second application. (ECF Nos. 3, 4.) In screening Morton's complaint, the Court dismissed all claims with leave to amend by June 30, 2022. (ECF No. 5.) The Court noted that Morton might not qualify for IFP status based on the information provided in his second IFP Application and instructed him to file a new application if his financial situation had changed. (*Id*. at 1 n.1.)

Morton has not filed a third IFP Application. But he timely filed a First Amended Complaint. (ECF No. 7 ("FAC").) Morton also moves the Court to find and appoint him a free attorney. (ECF No. 8.) The matter of the filing fee is again temporarily deferred. The Court now screens the FAC under 28 U.S.C. § 1915A and denies Morton's motion for appointment of counsel.

**II.    SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the Court must identify

any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* §§ 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, under the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the Court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all allegations of material fact stated in the complaint, and the Court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal

pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *See id*.

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

Finally, all or part of a complaint filed by an incarcerated person may be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (*e.g.*, claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (*e.g.*, fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

**III.   SCREENING OF FAC**

In his FAC, Morton sues five Defendants for events that took place while he was incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 7 at 1-2.) Morton sues Charles Daniels, Michael Minev, R. Perri, Perri, Perrie, and W. Gittere. (*Id.* at 2.) Morton brings six claims and seeks injunctive and monetary relief. (*Id.* at 3-9.)

**A.    Factual allegations**

Morton alleges the following.[1] Near the end of 2020, Caseworker Perrie told Morton that he "was going to do heard immunity" on the prisoners "regardless of the outcome." (*Id.* at 3.) The herd immunity protocol was implemented by NDOC Director Charles Daniels. (*Id.* at 4.) Perrie had Morton moved from housing unit 7 to unit 2 knowing that unit 2 housed prisoners who had tested positive for COVID-19, people reacted differently to the SARS-CoV-2 virus that caused the COVID-19 disease, and the disease could be dangerous for some people. (*Id.* at 3.) Unit 2 is a dormitory-style housing unit that has only bars separating its wings from the rotunda where prisoners from other housing units socialize. (*Id.*) Breath from all prisoners in the rotunda enters unit 2 as a result. (*Id.*)

Defendants were aware that COVID-19 posed a serious risk to those who contracted it because that information was publicized by the CDC. (*Id.* at 4.) Daniels was authorized to implement safety protocols to prevent the virus from spreading. Daniels required that prisoners be issued masks, but only the flimsy orange cotton kind. (*Id.*) He did not require that windows be opened for ventilation purposes. (*Id.* at 5.) And Daniels did not require that prisoners be fed meals in trays that could be closed. (*Id.*)

NNCC Medical Supervisor Michael Minev had authority to require that infected prisoners be quarantined, all prisoners be provided better masks and covers for their food trays, the windows be opened for ventilation purposes, and prisoners be tested weekly for the virus. (*Id.*) Minev failed to implement any of those measures at NNCC. (*Id.*) But similar safety protocols were implemented at other NDOC facilities. (*Id.*) NNCC Warden R. Perri also did not use his authority to implement any safety protocols to protect against the virus spreading at NNCC. (*Id.* at 6.)

Assistant Director W. Gittere did not use his influence to correct the other Defendants' failures to implement safety protocols at NNCC. (*Id.* at 7.) As the assistant director of NNCC, Gittere was responsible for the health and welfare of prisoners at that

---

[1]The Court uses any job position or title that Morton ascribes to Defendants. This should not be construed as a finding about the truthfulness of those allegations.

4

prison. (*Id.*) Gittere was aware of the herd immunity protocol but did nothing to stop it. (*Id.*) Gittere was made aware of these issues through "written letter documents" and "tapped phone calls[.]" (*Id.*)

A prisoner who was infected with COVID-19 was housed next to Morton the entire time the prisoner was sick. (*Id.* at 6.) This happened when prison officials implemented the herd-immunity protocol at NNCC. (*Id.*) Morton contracted COVID-19 on or around December 15, 2020, and was bedridden with it until January 15, 2021. (*Id.* at 3.) Morton lost his sense of smell as a result, and still has trouble breathing. (*Id.*) Morton got the COVID-19 vaccine when it was available to him. (*Id.* at 8.)

Based on these allegations, Morton contends that Defendants were deliberately indifferent to the risk that the SARS-CoV-2 virus and COVID-19 disease posed to his health. The Court liberally construes the FAC as bringing claims based on that single theory of liability, which it addresses below.

### B.    Eighth Amendment—Unsafe prison conditions

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The "treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). The Eighth Amendment imposes duties on prison officials to take reasonable measures to guarantee the safety of inmates and to ensure that inmates receive adequate food, clothing, shelter, and medical care. *See Farmer*, 511 U.S. at 832.

To challenge conditions of confinement under the Eighth Amendment, a plaintiff must meet both an objective and subjective test. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). The objective prong requires a "showing that the deprivation was 'sufficiently serious' to form the basis for an Eighth Amendment violation." *Id.* With respect to the subjective prong of the Eighth Amendment analysis, a prisoner must establish that prison officials were deliberately indifferent to serious threats to the inmate's health or

safety. *See Farmer*, 511 U.S. at 834. To do so, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference." *Id*. at 837. Prison officials may not escape liability because they cannot, or did not, identify the specific source of the risk; the serious threat can be one to which all prisoners are exposed. *See id.* at 843. But "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Based on the allegations, Defendants were aware that COVID-19 posed a serious threat to some people. Defendants had authority to implement safety protocols like testing for the virus, quarantining infected prisoners, providing prisoners with better-than-cloth masks, covering the prisoners' food, and opening windows to improve ventilation. Defendants did not implement any of these safety protocols at NNCC. Similar safety protocols were implemented at other NDOC facilities and recommended by the CDC.

Instead of implementing the recommended safety protocols, Daniels, Minev, Perri, Perrie, and Gittere either created, enforced, or did nothing to prevent the prisoners from being subjected to a herd-immunity procedure at NNCC in late 2020. Under the procedure, infected prisoners were not quarantined. Morton was moved to a different unit that these Defendants knew housed infected prisoners. The prisoner in the cell next to Morton contracted the virus and was not removed from his cell the entire time of his sickness. Then Morton caught the virus and was bedridden with COVID-19 for a month. Morton lost his sense of smell and still has trouble breathing.

The Court finds that these allegations are enough for screening purposes to state a colorable claim for deliberate indifference to the serious threat that the SARS-CoV-2 virus and COVID-19 disease posed to Morton's health. The Eighth Amendment claim for deliberate indifference to a health threat can therefore proceed against Daniels, Minev, Perri, Perrie, and Gittere.

### IV. MOTION FOR APPOINTMENT OF COUNSEL

A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil-rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id*. "Neither of these considerations is dispositive and instead must be viewed together." *Id*.

Morton moves the Court to find and appoint him a free attorney, arguing that he is not trained in the law or writing and, because he is housed in a conservation camp, has limited access to legal materials. (ECF No. 8.) Morton has articulated a colorable claim for relief and sufficiently communicated it to the Court. The Court cannot conclude on this thin record, however, that Morton is likely to succeed on the claim's merits. So the Court does not find exceptional circumstances warranting the appointment of counsel in this action. The Court therefore denies the motion for appointment of counsel without prejudice.

### V. CONCLUSION

It is therefore ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 4) is deferred.

It is further ordered that the Eighth Amendment claim for deliberate indifference to the health threat posed by the SARS-CoV-2 virus and COVID-19 disease can proceed against Defendants R. Perri, Charles Daniels, Perrie, W. Gittere, and Michael Minev.

It is further ordered that Defendant Perri is dismissed from the FAC without prejudice because no allegations are pled about that person.[2]

---

[2] The Court suspects that "Perri" is a typo in the list of Defendants and Morton intended to sue only "Perrie," who is the caseworker he discusses elsewhere in the FAC.

It is further ordered that the motion for appointment of counsel (ECF No. 8) is denied without prejudice.

It is further ordered that given the nature of the claim that the Court has permitted to proceed, this action is stayed for 90 days to allow Morton and Defendants an opportunity to settle their dispute before the $350 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties may not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order about that matter. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General must file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered before the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive-motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Morton's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Morton will be required to pay the full $350 statutory filing fee for a civil action. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting his application to proceed *in forma pauperis*. If Morton is allowed to proceed *in forma pauperis*, the fee will be paid in installments from his prison trust account. *See* 28 U.S.C. § 1915(b). If Morton is not

allowed to proceed *in forma pauperis*, the full $350 statutory filing fee for a civil action plus the $52 administrative filing fee, for a total of $402, will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party must file a "motion to exclude case from mediation" no later than 21 days before the date set for mediation. The responding party will have seven days to file a response. No reply may be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that if Morton needs an interpreter to participate in the mediation program, he will file a notice identifying the interpretation language and the need for the interpreter within 30 days from the date of the entry of this order.

It is further ordered that the Attorney General's Office must advise the Court within 21 days from the date of the entry of this order whether it will enter a limited notice of appearance on behalf of the Interested Party identified below for the purpose of participating in the Early Mediation Program. No defenses or objections, including lack of service, will be waived because of the filing of the limited notice of appearance.

The Clerk of Court is directed to (1) send Morton a courtesy copy of the First Amended Complaint (ECF No. 7), (2) add the Nevada Department of Corrections to the docket as an Interested Party, and (3) electronically serve a copy of this order and a copy of the First Amended Complaint (ECF No. 7) on the Office of the Attorney General of the State of Nevada by adding the Attorney General of the State of Nevada to the Interested Party on the docket. This does not indicate acceptance of service.

DATED THIS 12th Day of August 2022.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NICK MORTON,<br><br>　　　　　　　Plaintiff,<br>　v.<br>R. PERRI, *et al*.,<br><br>　　　　　　　Defendants. | Case No. 3:22-cv-00186-MMD-CLB<br><br>REPORT OF ATTORNEY GENERAL RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF MAY NOT FILE THIS FORM.**

On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report 90 days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

**REPORT FORM**

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**Situation One: Mediated Case**: **The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

_____ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached

a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for _____ [*enter date*].

\_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

\_\_\_\_ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

\* \* \* \* \*

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

\_\_\_\_ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

\_\_\_\_ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____         _____
                               Print                                                                          Signature

Address: _____          Phone:

_____

2

Email:

3