UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| NICK MORTON,<br><br>              Plaintiff,<br><br>  v.<br><br>R. PERRI, *et al.*,<br><br>              Defendants. | Case No. 3:22-CV-00186-CLB[1]<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY JUDGMENT**<br><br>[ECF No. 49] |

      This case involves a civil rights action filed by Plaintiff Nick Morton ("Morton") against Defendants Charles Daniels ("Daniels"), William Gittere ("Gittere"), Michael Minev ("Minev"), Burch Perry ("Perry"), and Perry Russell ("Russell") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 49.) Morton responded, (ECF No. 52), and Defendants replied. (ECF No. 53.) For the reasons stated below, Defendants' motion for summary judgment, (ECF No. 49) is granted.

**I.    BACKGROUND**

    **A.    Procedural History**

      Morton is formerly an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On April 27, 2022, Morton filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while he was incarcerated at Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1.) The District Court screened the original complaint and dismissed the complaint with leave to amend. (ECF Nos. 5, 6.) On June 23, 2022, Morton filed an amended complaint. (ECF No. 7.) On August 12, 2022, the Court screened Morton's amended complaint pursuant to 28 U.S.C. § 1915A(a). (ECF

---

[1]    The parties consented to the undersigned's jurisdiction to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C.§ 636(c) and Federal Rule of Civil Procedure 73. (*See* ECF No. 32.)

No. 10.) The Court allowed Morton to proceed on a single Eighth Amendment deliberate indifference to unsafe prison conditions claim related to the COVID-19 pandemic against Defendants. (*Id.* at 6.)

Morton's amended complaint alleges that Defendants were aware that COVID-19 posed a serious threat to some people. Defendants had authority to implement safety protocols like testing for the virus, quarantining infected prisoners, providing prisoners with better-than-cloth masks, covering the prisoners' food, and opening windows to improve ventilation. Defendants did not implement any of these safety protocols at NNCC. Similar safety protocols were implemented at other NDOC facilities and recommended by the CDC. Instead of implementing the recommended safety protocols, Defendants either created, enforced, or did nothing to prevent the prisoners from being subjected to a herd-immunity procedure at NNCC in late 2020. Under the procedure, infected prisoners were not quarantined. Morton was moved to a different unit that these Defendants knew housed infected prisoners. The prisoner in the cell next to Morton contracted the virus and was not removed from his cell the entire time of his sickness. Then Morton caught the virus and was bedridden with COVID-19 for a month. Morton lost his sense of smell and still has trouble breathing. (ECF No. 7.)

On December 13, 2023, Defendants filed the instant motion arguing summary judgment should be granted because (1) there is no evidence Defendants disregarded the risk of COVID-19 to Morton; (2) Defendants are entitled to qualified immunity; and (3) Morton did not properly exhaust his administrative remedies as to all Defendants. (ECF No. 49.)

///

///

///

///

///

### B. Factual Summary[2]

The following facts are undisputed: Morton contracted COVID-19 on or about December 15, 2020, while incarcerated at NNCC in Unit 2. (ECF No. 7 at 2.) Morton was provided with a vaccination by the NDOC, which was a measure Morton took to help himself from becoming more damaged from COVID-19. (*Id.* at 5.) Morton was moved to Unit 2 from Unit 7, which processed new inmates into the prison system. (*Id.* at 3.)

On February 20, 2020, the NDOC updated Medical Directive 231, Communicable Diseases related to COVID-19. (ECF No. 49-3.) Medical Directive 231 provides guidance to custody and medical staff for proper procedures for the housing of NDOC inmates with communicable diseases. (*Id.*) In particular, the Medical Directive includes specific guidelines for identification and containment of a communicable disease outbreak and isolation procedures. (*Id.* at 3-6.)

Defendant Russell became warden at NNCC in April 2020 and remained in that position until his retirement in January 2022. (ECF No. 49-4 at 2.) According to a Declaration submitted by Defendant Russell, as a former Warden, Russell oversaw implementation of medical protocols issued by the NDOC Medical Director, and instructed staff to comply with all protective protocols communicated by the NDOC Medical Director, including COVID-19 protocols. (*Id.*)

According to a Declaration submitted by Defendant Minev, who is formerly the NDOC Medical Director, he developed a comprehensive program to address the novel coronavirus, COVID-19. (ECF No. 49-5.) Minev headed up a team assembled by Former Director Daniels. (*Id.*)

///

---

[2] Several exhibits attached to Defendants' Motion for Summary Judgment have once again <u>not</u> been properly submitted to the Court for consideration due to a lack of authentication and foundation rendering it impossible for the Court to determine the admissibility of these items. Therefore, the Court will not rely on those exhibits for purposes of summary judgment. Fed. R. Civ. P. 56(c). However, here, Defendants have provided sufficient evidence in a form the Court can consider, which allows the Court to grant the motion on the merits.

During the time frame for the allegations in this case, Defendant Gittere was the Warden of Ely State Prison, and was not promoted to Deputy Director of Programs until November 2021 and transitioned to Deputy Director of Operations in December 2021. (ECF No. 49-8.) As a warden in the NDOC, Gittere is unaware of any attempt by the NDOC to define or employ "herd immunity." (*Id.* at 3.) Finally, Gittere states that NDOC's actions were based on protocols developed from evolving clinical evidence and the advice of medical experts. (*Id.*)

## II.     LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts

are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden is

"not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.    DISCUSSION

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually

suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Here, Defendants argue that they were not deliberately indifferent because they did not disregard the risk of harm in this case–which is a necessary element that Morton must establish to survive summary judgment. (ECF No. 49 at 6.) Instead, the declaration provided by Defendant Minev provides the steps he took, under the direction of Defendant Daniels, to establish protocols and procedures for handling the COVID-19 pandemic within each of NDOC's facilities. (*See* ECF No. 49-5.) Guidance was sought from the Centers for Disease Control. Defendant Daniels established an Emergency Operation Center at each "parent facility" that operated nearly around the clock. Visitation was suspended, volunteers and contractors were excluded from facilities, and staff entry was monitored and controlled. Quarantine was established and enforced for staff and inmates. Despite the best efforts of State Officials, prison officials, and employees, COVID-19 got into the prisons. (*Id.*)

While Defendants may have been unsuccessful in their efforts to prevent Morton from contracting COVID-19, it cannot be said they disregarded the risk COVID-19 posed to *all* inmates. Defendants are responsible for the safety of all NDOC inmates, and making a choice that would prevent the most inmates from contracting the virus is a rational

decision which does not demonstrate the disregard of risk to any individual inmate's safety. *Farmer*, 511 U.S. at 837.

For all of these reasons, Defendants have met their burden on summary judgment as they have submitted admissible evidence establishing that they did not disregard a risk to Morton's safety. The burden now shifts to Morton to establish that a genuine issue of material fact actually exists. Morton must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*, 992 F.3d at 897. However, Morton has not provided any facts to show that Defendants knew of *and disregarded* the serious risk of COVID-19. And Morton's bald assertions that NNCC did not follow the NDOC's medical guidance for handling the COVID-19 pandemic is unsupported and belied by the record. Thus, Morton has failed to meet his burden on summary judgment to show an issue of fact that Defendants were deliberately indifferent to Morton's safety.

As Defendants met their burden on summary judgment, and Morton has not established that a genuine issue of material fact exists, Defendants' motion for summary judgment is granted.[3] *Matsushita,* 475 U.S. at 586.

### IV. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' motion for summary judgment, (ECF No. 49), is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: January 19, 2024.

_____
**UNITED STATES MAGISTRATE JUDGE**

---

[3] Because the Court finds that Morton's claim fails on the merits, it need not address Defendants' procedural arguments regarding exhaustion or qualified immunity.